We will move on to our second argument set for argument Lesnik v. ISM Vuzem d.o.o., case number 23-16114. We will move on to our second argument set for argument Lesnik v. ISM Vuzem d.o.o., case number 23-16114. Thank you. May it please the Court, I am Bill Dresser. I am here to present an argument on two legal issues on appeal. Both involve interpretation of statute and both concern the application of facts to that interpretation of the statute. This appeal arises from the importation of foreign workers to perform construction services in the United States, including at the Tesla facility in Fremont. The first claim deals with the issue under the False Claims Act of whether underpayment of visa fees is an obligation under the reverse False Claims Act claim. So can I ask you about that? Yes. Because you framed it very carefully to say underpayment, but they didn't underpay. They paid the fees for the application that they submitted. Your argument is they submitted the wrong application, right? There are two parts of the fraud that was involved. The first fraud is they applied for the wrong visas. And the second is that when they applied for the wrong visas or impermissible, illegal, impermissible visas, they applied for visas to do construction work, which you can't do. It's prohibited. So the fraud is first in applying for the wrong type of visa. And the second is when they applied for the wrong type of visa, their application included fraudulent statements, that these were all supervisors, that they worked for another company, that they would not displace American workers and several other false representations within their application itself. So there's two parts of it. Right. But you don't disagree that the application that they filed, they paid the correct fees. That that is not the claim. The claim is I understand that. I just want to make sure that we understand where we're at. Right. So we, in order to find for you, we have to delve into this issue and say there were fraud. They fraudulently, they had an obligation to file this other fee and pay more money, and they didn't do that. Well, they didn't have an obligation to even apply for visas. But once they applied for visas, they committed fraud by applying for the wrong visas. This is exactly the position that is taken by the agency which is tasked with enforcing the FCA, which is the Department of Justice. So initially in the trial court and initially in this appeal, I cited to the Infosys case, in which the Department of Justice prosecuted Infosys because they applied for the wrong – well, in Infosys there was a couple of different frauds. But one of the frauds was they applied for the wrong types of visas and they committed violations in connection with the visas. In preparing for the oral argument, I found from the Billington case, which is for some reason still on appeal in the Second Circuit, that they had cited to this other case that the Department of Justice prosecuted in South Carolina where the only issue was that the entity – I forget the name of it, Lords and something or other. Let me see. Larson and Tubro Technology Services, they applied for and obtained B-1 visas, the exact same thing that happened here. And that was an impermissible type of visa. They were required to get at least H-1B visas. So in that case, the Department of Justice, tasked with enforcing the FCA, in two separate cases that are identified, say it is fraud to apply for the less expensive, non-petition-based visas for $200 or $300 apiece rather than the more expensive visas. They committed the fraud and they paid the fees, not sometime in the future, but when they applied for the visas, they paid the money at that time. When these workers were given documents in English that they didn't look at, when they were given cash, when they were dropped off at a van just outside the U.S. Consulate and said, hey, apply for these visas, they committed the fraud at that moment, not something in the future. I mean, the 2009 amendments referred to the Conagra and the Pomeroy case where there was violations in the export visas, but they specifically said that those are examples they are not limited to, that this change in the law is not intended to exclude other types of contingent or fixed obligations that are similar in effect and purpose or that otherwise meet the definitions set forth in the proposed amendments. This comes from the appendix, the Senate report authored by Senator Leahy, which went over several ways in which judicial decisions had limited the effect of the FCA. They spent several pages identifying the changes under the Reverse False Claims Act. They said that we're not following the two cases that were cited by the trial court. The trial court cited two cases which were specifically rejected and specifically overruled in the 2009 amendments, saying it's a contingent. But those were the district court cases? Sorry. Go ahead. Were those the district court cases? No. The two cases cited by the district court in this case for its position that that would be contingent were the American textile case and the U.S. v. Bourseau case. The Bourseau case was in 2008. The American textile was in 1999. Both were specifically identified by the Senate and the House bills, and it's really well laid out in the Senate report that those are improper, limiting on contingent. The statute should not be limited to a fixed duty. And they cited with approval the two cases of the Pomeroy and the other Conagra case, which said, hey, even if you apply now for what is the value of some airplane wings or what is the value of the textiles, if you had to sometime in the future do something else, it doesn't matter, you're still committing fraud. Well, that has to do with the fixed duty, but the requirement, as I understand it, that there has to be an obligation has always been there, hasn't it? That's the language is obligation. Yes. The question is. . . So that is the real question here that I see is whether or not there was an obligation. Correct. Okay. Yes. It turns on the issue of what is an obligation under the FCA, and cases which have narrowly construed obligation have been overruled and rejected. Those which have a more extensive obligation. You agree. I mean, the world today, don't we have a split, as I understand it, in the district courts? There's two district courts that have rejected this argument that you're making now and one in New Jersey that arguably has adopted it. Correct. There's no circuit court precedent on this right now? No. The Billington case, I think, was orally argued in April of 2023, and they still don't have a decision, so I'm not sure what they're going to do. And that was. . . Billington was in the. . . Which court is that? I believe it's the Second Circuit. Second Circuit. Correct. And so, yeah, it may be that the trial court, in finding the way that it did, both made an error in referring to cases as the basis for its decision, which had already been specifically overruled, but in asking to say, hey, if this is the way it is, you're going to have to get a decision that says this is an obligation. Yes, but your real argument is that they made the. . . They should have filed a different application. They committed fraud when they applied for the wrong visa, saying we're going to have these people do supervisor work. Right. And that was a lie in the application. But that may have been. I mean, but I don't understand how that gets us. . . A false claim. I think maybe this is where Judge Schroeder is going, is it doesn't mean that they had an obligation to apply for something else. They didn't have an obligation to apply for any visas. But when they applied for the visas. . . Exactly. When they applied for the visas, they committed fraud in applying for the wrong visas. When they applied for the visa, they had an obligation to pay for that visa. You're at, is my understanding of the decision, the district court decision from our circuit and also the D.C. Circuit, that they did not have an obligation to pay for a different visa. And that's the problem. That's not the position that's taken by the Department of Justice, which is tasked with enforcing the FCA. In two separate cases which I've identified to the Court, that is the position by the Department of Justice. They'd apply for. . . I'm just trying to. . . That is the position taken by the district court in the Ninth Circuit and the district court in the D.C. Circuit. That is correct. Okay. No doubt about that. And the Ninth Circuit decision was written by Judge Koh, who's now a judge on this circuit. Judge Koh is now on this circuit, yes. Okay. I don't think that should make a decision. No, it doesn't make a decision. It's just a note of color. And this is a matter for which there is a de novo review. Okay? It's an interpretation of a statute. It's the application of the facts of the statute. And the correct analysis is, as indicated, follow the statute, follow the exact words of the statute, do not follow a trial court's decision which cites to the cases which were specifically overruled by that statute. In fact, apply it as it's being applied by the Department of Justice and as the statute specifically says. The entirety of the 2009 amendments to the FCA were to abrogate all of those cases which narrowly construed obligation. I think we've addressed this. I have like a very short three minutes. There is also the issue of the second issue is the interpretation of the TVPA or actually the TVPRA of what is a victim. And I believe that that's a really shorter item because of the exact language of the statute and the illogical fallacy that was used by the trial court. First, addendum item number 15 is the TVPRA of 2003. It added the civil action for victims. This is docket entry 5-3 at page 179. And it provides that there's a victim for a violation of any of 18 U.S.C. 1589, 1590, or 1591. Section 1589 specifically identifies that a violation includes threatening one person to get something from another person. It defines abuse or threatened abuse of legal process, which is exactly what the issue is for Gregor Lesnik. When the Vusims tried to have him prosecuted in, I believe they prosecuted him in Slovenia, in order to exert pressure on another person, that's specifically in the statute, 22 U.S.C. 7102 uses the exact same language, in order to exert pressure on another person. So if you're doing a violation of this, specifically under the statute, you're doing something against one person to coerce work by someone else, that is the exact situation that you have with Gregor Lesnik. And the fallacy by the trial court was a victim can include a person who is a victim. Aren't you defining, doesn't your argument require us to, when it says cause that person, that person has to be different than Lesnik, that has to be a different victim? It could be either or it could be both. So that is actually the logical, the point. No, I think exerting pressure on another person to cause that person to take some action, that person refers to the person who's having pressure exerted on them. Correct. That is Gregor Lesnik. And it is to coerce all of the people working for a person. Yeah, but that's the whole problem. Now you're trying to get around that by saying it's not trying to get Lesnik to take any action, it's trying to get other people who aren't covered by the statute to take other action. No, the other people are covered by the statute. This is exerting pressure on another person to cause that person to take some action. No, it uses the word another person. To exert pressure on another person. Okay. That's the language of the statute. And the argument is kind of what is being stated here. Just because the people who are coerced to work are victims does not mean that it isn't also a violation to engage in the abuse of process to threaten Gregor Lesnik to compel or coerce these other people to work. Okay. He's still a victim. There is no way. We've gotten your argument. You're over time. Right. So. Oh, I am. Yeah, it's counting up. It's red. The red light. Okay, sorry. I saw. No, I understand. It's good. Everybody does it. Can I just say one second? This is a de novo review. I understand. You said that already. There are proposed orders that have been submitted as part of the record. That's the relief we're asking for. Thank you so much, counsel, for your argument. And we've got the strange case where nobody came. They were also scared of you. They didn't come to argue against you. They were argued indirectly. I understand. Through their related parties. I understand. Thank you very much. All right, thank you. The case is now submitted.
judges: SCHROEDER, GOULD, NELSON